372

910 P.2d 143

STATE of Hawai'i, Plaintiff–Appellee,

v.

Tekiripute SADLER, Defendant–
Appellant.

No. 17044.

Intermediate Court of Appeals of Hawai'i.

Jan. 24, 1996.

James S. Tabe, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Heith M. Kaneshige, Deputy Prosecuting Attorney, City and County of Honolulu, Honolulu, on the brief, for appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

Following a jury-waived trial on February 24, 1993, the district court found Defendant–Appellant Tekiripute Sadler (Defendant) guilty of sexual assault in the fourth degree in violation of Hawai'i Revised Statutes (HRS) § 707–733(1)(a) (1993)[1] and of criminal trespass in the second degree in violation of HRS § 708–814(1)(b) (1993).[2] On April 1, 1993, the court sentenced Defendant and entered judgment. Execution of the sentence was stayed pending appeal. For the reasons stated below, we vacate the sexual assault conviction and remand that charge for a new trial, and we reverse the criminal trespass conviction.

I.

■ Sexual assault in the fourth degree is a misdemeanor punishable by a one-year maximum term of imprisonment. HRS §§ 707–733, 701–107(3) (1993),[3] and 706–663 (1993).[4] Hawai'i Rules of Penal Procedure (HRPP) Rule 5(b)(1) provides that "the court shall in appropriate cases inform the defendant of the right to jury trial in the circuit court or that the defendant may elect to be tried without a jury in the district court."

"Appropriate cases" arise whenever the accused has a constitutional right to a jury trial. See *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 *reh'g. denied,* 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968); *State v. Swain,* 61 Haw. 173, 175, 599 P.2d 282, 284 (1979); *State v. Shak,* 51 Haw. 612, 614, 466 P.2d 422, 424, *cert. denied,* 400 U.S. 930, 91 S.Ct. 191, 27 L.Ed.2d 190 (1970). In Hawai'i, a statutory right to a jury trial arises whenever a criminal defendant can be imprisoned for six months or more upon conviction of the offense. HRS § 806–60.

*State v. Ibuos,* 75 Haw. 118, 120, 857 P.2d 576, 577 (1993). Because the sexual assault offense at issue here is a misdemeanor punishable by a maximum one-year term of imprisonment, Defendant was potentially subject to punishment for more than six months,

1. Hawai'i Revised Statutes (HRS) § 707–733 (1993) states in pertinent part:

   **§ 707–733 Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
   (a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion;
   . . . .
   (2) Sexual assault in the fourth degree is a misdemeanor.

2. HRS § 708–814 (1993) provides in pertinent part:

   **§ 708–814 Criminal trespass in the second degree.** (1) A person commits the offense of criminal trespass in the second degree if:
   . . . .
   (b) The person enters or remains unlawfully in or upon commercial premises *after reasonable warning or request to leave* by the owner or lessee of the commercial premises or the owner's or lessee's authorized agent or police officer; provided that this paragraph shall not apply to any conduct or activity subject to regulation by the National Labor Relations Act.
   (2) Criminal trespass in the second degree is a petty misdemeanor.
   (Emphasis added.)

3. HRS § 701–107 (1993) lists the grades and classes of offenses. It states in pertinent part, "A crime is a misdemeanor if it is so designated in this Code . . . which provides for a term of imprisonment the maximum of which is one year." HRS § 701–107(3).

4. HRS § 706–663 (1993) provides as follows:

   **§ 706–663 Sentence of imprisonment for misdemeanor and petty misdemeanor.** After consideration of the factors set forth in sections 706–606 and 706–621, the court may sentence a person who has been convicted of a misdemeanor or a petty misdemeanor to imprisonment for a definite term to be fixed by the court and *not to exceed one year in the case of a misdemeanor or thirty days in the case of a petty misdemeanor.*
   (Emphasis added.)

and thus, the court had a duty to inform Defendant of his right to a jury trial under HRPP Rule 5(b)(1).

■ Correspondingly, HRPP Rule 5(b)(3) mandates that the defendant must waive the right to trial by jury, "in writing or orally in open court." Hence, the Hawai'i Supreme Court has held that, "[a] knowing and voluntary waiver of the right to trial by jury must come directly from a defendant, either in writing or orally." *Ibuos*, 75 Haw. at 121, 857 P.2d at 578 (citing HRPP Rule 5(b)(3)). Waiver of the right to a jury trial by defense counsel is not a valid waiver. *See State v. Young*, 73 Haw. 217, 221, 830 P.2d 512, 514 (1992). The *Young* court explained that "the waiver of a fundamental right such as the right to a jury trial must be through the personal action of the beneficiary of that right." *Id.* at 222, 830 P.2d at 515.

Here, Defendant was not tried in circuit court, and as the State concedes, there was no written or personal oral waiver of a jury trial. Although Defendant's attorney waived trial by jury, such a waiver was not effective.[5] *See Young, supra.* A counsel's waiver of the client's right to a jury trial is insufficient in the absence of any colloquy between the court and the defendant. *Ibuos*, 75 Haw. at 121, 857 P.2d at 578. Here, because Defendant did not validly waive his right to a jury trial, we vacate the jury-waived conviction for sexual assault and remand the sexual assault charge for a new trial.

## II.

A jury trial was not required for the charge of criminal trespass in the second degree because it is a petty misdemeanor punishable by a thirty-day maximum term of imprisonment. HRS §§ 708–814(1)(b), 708–814(2) and 706–663. With respect to this conviction, we agree with Defendant that there was insufficient evidence to convict him.[6]

## A.

On September 11, 1992, Defendant allegedly became unruly at the Waikiki bar called Hernando's Hideaway (Hernando's). The manager of the bar called the police and had a police officer issue a "trespass warning" to Defendant.[7] This so-called "verbal trespass warning"[8] prohibited Defendant from re-

5. The transcript of Defendant's December 28, 1992 arraignment reveals the following exchange:

> [PROSECUTOR]: Yes, we are not ready to proceed on both of our charges. We are ready to proceed on one of them.
> [THE COURT]: Okay. All right,—
> [PROSECUTOR] [sic]: And also, Your Honor, I am informed by [defense counsel] that [Defendant] will be waiving his right to jury trial for Case 25A.
> [DEFENSE COUNSEL]: We are prepared to waive jury trial, Your Honor.

The court continued the case to a later date. Although Defendant was present, the trial court did not question Defendant regarding his waiver of a jury trial.

6. In conjunction with this argument, Defendant asserts that he was entitled to a warning and should have been given an opportunity to leave the premises before he was arrested for trespass.

7. The transcript does not reveal what specifically transpired on September 11, 1992. The record contains the following testimony by the bar manager:

> A [(BAR MANAGER)] [Defendant] has come into Hernando's several times. After a series of incidents where he's caused prob-

lems[,] I—I had him trespassed from [sic] the property.

> . . . .
> Q [(PROSECUTOR)] Okay. And ... what were the circumstances under which the defendant was trespassed from [sic] the property.
> A Well, previous to that, several times when he's come in, he's—he's gotten drunk, disorderly, and approached several female customers and....
> [DEFENSE COUNSEL]: Objection, Your Honor. This is not ... relevant to the question. The question specifically is what was he trespassed [sic] for on that day.

After a brief colloquy over the defense counsel's objection, the court stated, "Okay. So, any prior incidents I won't consider, and it ultimately doesn't matter why he was trespassed [sic] if he was trespassed [sic]."

8. At trial, the officer who issued the trespass warning to Defendant explained,

> As far as the trespass warning, one of the—the points that we have to get across to the gentleman who's being trespass warned [sic] or to the female being trespass warned is the understanding of the warning. Either it be [sic] verbal or written. It's gotta [sic] be explained. Sometimes ... you read it from a form and they still ask you what i[t] basically does—does

turning to Hernando's for a period of one year. However, Defendant returned to Hernando's on October 31, 1992, a month after the "trespass warning." He was arrested in the instant case for violating the September 11 warning.[9]

The police officer who issued the warning testified that after calming Defendant on September 11, he explained to Defendant that Defendant was prohibited from coming back to Hernando's for one year. The officer also informed Defendant he would be arrested if he returned during that period.[10] In contrast to Defendant's claim that he was too inebriated to understand the warning, the officer stated that "in my opinion, [Defendant] understood" the warning. While Defendant did not dispute the fact that he received a "verbal warning" from Hernando's at "one time," he testified that he had "had a few drinks" and could not recall the "exact date" of the warning.[11]

### B.

HRS § 708–814(1)(b) states that a person commits the offense of criminal trespass in the second degree if "[t]he person enters or remains unlawfully in or upon commercial premises after reasonable warning or request to leave by the owner or lessee or the own-

er's or lessee's authorized agent or [a] police officer[.]"

We believe the conduct in this case did not fall within the ambit of the criminal liability defined under the statute. The interpretation of a statute is a question of law which this court reviews *de novo*, and our "foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language contained in the statute itself." *State v. Wells*, 78 Hawai'i 373, 376, 894 P.2d 70, 73, *reconsideration denied*, 78 Hawai'i 474, 896 P.2d 930 (1995) (citations omitted). On the face of the statute, liability is based only on the refusal to obey a "warning or request *to leave*." HRS § 708–814(1)(b) (emphasis added). Here, Defendant was arrested for returning to the premises after having been previously removed and told that he would be arrested should he "come back to the club." Given its ordinary reading, the statute contemplates a warning or request contemporaneous with a person entering or remaining unlawfully on the premises. Nothing in the statute hinges penal liability on a warning which in effect, amounts to a quasi-restraining order against a particular person, enforceable by the State in the future, at the behest of private parties.

The Commentary in the Hawai'i Penal Code is an aid to understanding the provi-

---

that mean [sic]. And then, sometimes you have to go down [to] layman's terms. You have to explain to the gentleman or female what's going on.

9. We note that Defendant's presence in Hernando's was not challenged until after he had been served at least one drink and had allegedly committed the sexual assault offense.

10. At trial, the officer related the following:

[O]n that day [(September 11),] it was not a written trespass warning. It was a verbal trespass warning. And, yes, I had to explain it to [Defendant]. Upon getting to the scene[,] [Defendant] was extremely angry, I guess, at being removed from the club. So, we had to calm him down at first, and *we did explain the trespass warning to [Defendant] explaining that he cannot come back to the club per management for a period of one year. And, if he did, he would be arrested for a trespass warning—for violating the trespass . . . given*.

And, we informed him that there's other clubs in Waikiki. If [Defendant] wanted to continue going to other clubs in Waikiki, he's

more than welcome to, but he was being trespassed from [sic] Hernando's Hideaway per management.

(Emphasis added.)

11. On direct examination, Defendant testified as follows:

Q [(DEFENSE COUNSEL)] Okay. Do you remember having been asked not to be there [(Hernando's)] at any time?

A [(DEFENDANT)] There was . . . one time that I—I remember. There was . . . a verbal warning that was given [to] me, and it wasn't very specific as to—because at the time I . . . had a few drinks.

. . . .

Q When was that specific warning or that general warning?

A Well, I'm not quite sure of the . . . exact date of it. I'm not quite sure.

Q Okay.

THE COURT: Could it have been September 11th?

A It could have been. The exact date is unclear because I . . . don't specifically remember any documentation. . . .

sions of the Code. HRS § 701–105 (1993). The Supplemental Commentary on HRS §§ 708–813 to 815 (1993) indicates the legislature's objective was merely to expedite the removal of persons from commercial premises by making the refusal to heed a request to leave a crime, rather than a violation, thus authorizing the police to promptly remove a person by means of an arrest, as they might do in the case of any other crime.

The Supplemental Commentary refers to Act 201, Session Laws 1979. Under Act 201, the legislature added subsection (c) to HRS § 708–814, increasing the penalty for criminal trespass from a violation to a petty misdemeanor. 1979 Haw. Sess. L. Act 201, § 1 at 422–23. The legislative objective was to enable retailers to expedite the removal of "undesirables" [12] from commercial premises. See Hse.Stand.Comm.Rep.No. 984, in 1979 House Journal, at 1633. The legislature found that the police would not place persons charged with simple trespass under physical arrest without first obtaining a penal summons. Id. at 1632. Because obtaining the summons was "a lengthy, time-consuming process," the legislature sought a more expeditious means of removing disruptive persons from commercial premises. Id. at 1633. It did this by making trespass a petty misdemeanor, thus allowing the police to make an arrest and to remove a person from the premises without first obtaining a penal summons. Id. at 1632–33.

> Your Committee finds that present law makes it extremely difficult for retailers and shopping centers to remove from their premises, solicitors or demonstrators who are harassing or inconveniencing customers or causing loss of sales, because being that such persons can only be charged with simple trespass, a violation, the police will not place them under physical arrest without a penal summons being first obtained. Since the obtaining of such a summons is a lengthy, time-consuming process, in effect there is nothing the merchant or retailer can presently do.
>
> Making the entering or remaining unlawfully in commercial premises criminal trespass in the second degree would effec-

tively *give retailers a means to remove undesirables because it would allow the police to place them under physical arrest, criminal trespass in the second degree being a petty misdemeanor.*

*Id.* (emphasis added).

Consequently, Defendant's conduct did not fall within the prohibition of HRS § 708–814(1)(b) and his conviction, therefore, must be reversed.

### III.

Accordingly, the April 1, 1993 judgment is vacated as to the sexual assault charge, and that charge is remanded for a new trial. The judgment on the trespass conviction is reversed.

---

**12.** We do not necessarily concur with this characterization.