***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-15-0000342
13-DEC-2016
07:51 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellant,

vs.

RUDOLPH G. KING, JR.,
Petitioner/Defendant-Appellee.

SCWC-15-0000342

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000342; CR. NO. 14-1-1986)

DECEMBER 13, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

When a person violates a trespass warning previously issued pursuant to Hawaii Revised Statutes (HRS) § 708-814(1)(b), may that violation be used as an underlying basis for a charge of second-degree burglary? We answer in the negative.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Trespass Warning and King's Reentry

On November 11, 2014, at the Kaimuki Times Supermarket, Rudolph G. King, Jr. stole a pack of Reese's Peanut Butter Cups and sweet tea, the total value of which was $8.66. A loss prevention officer stopped King outside the store and placed him under arrest for theft in the fourth degree. See HRS § 708-833 (2014).[1] At the time of King's arrest, the loss prevention officer issued King a trespass warning form entitled "Notification to Stay Off Property," which stated as follows:

> YOU ARE HEREBY ADVISED THAT YOUR PRESENCE IS NO LONGER DESIRED ON THE PREMISES OR PROPERTY LISTED ABOVE AND ON ALL PROPERTIES LISTED ON THE BACK OF THIS WARNING. THIS SERVES NOTICE THAT YOU ARE NOT TO RETURN TO SAID PROPERTY FOR THE DURATION LISTED ABOVE. VIOLATION OF THIS WARNING WILL SUBJECT YOU TO ARREST AND PROSECUTION FOR TRESPASSING PURSUANT TO SECTION 708-814 OF THE HAWAII PENAL CODE.

The trespass warning contains the addresses of all Times Supermarket locations in Hawaiʻi, and it was effective from November 11, 2014, to November 11, 2015. The warning also quotes HRS § 708-814(1)(b) (2014), contains King's description, and was signed by the loss prevention officer, a police officer, and King.

---

[1]     HRS § 708-833 provides as follows:

    (1) A person commits the offense of theft in the fourth degree if the person commits theft of property or services of any value not in excess of $250.

    (2) Theft in the fourth degree is a petty misdemeanor.

On December 18, 2014, at the McCully location of Times Supermarket, a loss prevention officer observed King take a ribeye roast, valued at $55.55, and exit the store without paying for it. After placing King under arrest, King verbally acknowledged that he was issued a prior trespass warning.

On December 22, 2014, King was charged by felony information with burglary in the second degree, in violation of HRS § 708-811 (2014):

> On or about December 18, 2014, in the City and County of Honolulu, State of Hawaii, RUDOPH G. KING JR. [(sic)] did intentionally enter unlawfully in a building, to wit, Times Supermarket, situated at 1772 South King Street, with intent to commit therein a crime against a person or property rights, thereby committing the offense of Burglary in the Second Degree in violation of Section 708-811[2] of the Hawaii Revised Statutes.[3]

**B. King's Motion to Dismiss**

On January 30, 2015, King filed a Motion to Dismiss Felony Information for Lack of Probable Cause and/or De Minimis Violation (motion to dismiss) to the Circuit Court of the First Circuit (circuit court). King contended that the State's

---

[2]    HRS § 708-811 states as follows:

> (1) A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

> (2) Burglary in the second degree is a class C felony.

[3]    An amended felony information was filed on December 29, 2014, to accurately reflect King's name.

reliance on the written trespass warning issued to him at Times Supermarket Kaimuki fails, as a matter of law, to establish probable cause that he unlawfully entered Times Supermarket McCully in violation of the second-degree burglary statute. King contended that a second-degree burglary charge pursuant to HRS § 708-811 cannot hinge upon a refusal to obey a prior written trespass warning issued pursuant to HRS § 708-814(1)(b), because a trespass warning is applicable only to a charge of criminal trespass in the second degree. That is, a person's failure to obey a prior written trespass warning issued pursuant to HRS § 708-814(1)(b) does not satisfy the "enters or remains unlawfully in a building" element of burglary in the second degree. Alternatively, King argued, pursuant to HRS § 702-236, that his conduct did not actually cause or threaten the harm or evil sought to be prevented by burglary in the second degree, since his conduct did not engender circumstances likely to terrorize occupants of premises intended to be protected by the second-degree burglary statute.[5]

---

[5]     A court has statutory authority to dismiss a prosecution if the conduct alleged constitutes a de minimis infraction:

> (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> (a)   Was within a customary license or tolerance, which was not expressly refused by the person whose

(continued . . . )

The State opposed King's motion to dismiss, arguing that the plain language of "enter or remain unlawfully" under HRS § 708-800 encompasses situations in which the defendant disobeys a prior trespass warning issued pursuant to HRS § 708-814(1)(b). According to the State, the prior trespass warning issued to King is "a lawful order not to enter or remain, personally communicated to" King, because its terms advised King that he was not allowed to enter or remain on Times Supermarket property--including Times Supermarket McCully--from November 11, 2014, through November 11, 2015. In response to King's argument that his conduct constituted only a de minimis violation of the burglary statute, the State argued that second-degree burglary was not only intended to prevent crimes involving "the terrorizing of persons situated on the relevant property," but

---

(continued . . .)

      interest was infringed and which is not inconsistent with the purpose of the law defining the offense;

    (b)   Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

    (c)   Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

    (2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

HRS § 702-236 (2014).

it also applied to unoccupied premises. Accordingly, the State urged the circuit court to deny King's motion to dismiss.

### C. Hearing on King's Motion to Dismiss

At the hearing on King's motion to dismiss,[6] King contended that liability under HRS § 708-814(1)(b) should not be used to impose an elevated criminal liability under the second-degree burglary statute, which uses a separate definition for "enters or remains unlawfully." According to King, the prior trespass warning was not a "lawful order" contemplated by HRS § 708-800 and that, therefore, the violation of the prior trespass warning would not satisfy the "enters or remains unlawfully" element of second-degree burglary under HRS § 708-811. King thus maintained that he should have been charged only with theft in the fourth degree and criminal trespass in the second degree.

In response, the State argued that the prior trespass warning issued personally to King revoked his privilege or license to enter or remain in any Times Supermarket location, and, hence, when King entered the McCully location of Times Supermarket, the "enters or remains unlawfully" element of second-degree burglary was met.[7]

---

[6] The Honorable Dean E. Ochiai presided.

[7] The parties did not proffer oral arguments with respect to King's contention that his conduct constituted a de minimis violation of HRS § 708-811.

The circuit court granted King's motion and dismissed with prejudice the charge of burglary in the second degree:

> The Court's of the belief that a trespass warning . . . does not give rise to having it become a vehicle to charge a Burglary in the Second Degree. I see two charges here. I see a Criminal Trespass in the Second Degree and a Theft Fourth Degree charge just based upon all that the Court has had to consider during the course of this hearing.

The court concluded that the State was attempting to convert two petty misdemeanors into a Class C felony, a course of action that the court rejected under the facts of the case. The circuit court also indicated that "the State [wa]s free to refile other charges that the facts in this case may give rise to." The court later filed its written Order Granting Defendant's Motion to Dismiss Felony Information (Order Granting Motion to Dismiss).

## II. APPELLATE PROCEEDINGS

The State timely filed its notice of appeal to the Intermediate Court of Appeals (ICA). The State challenged the circuit court's order granting King's motion to dismiss, arguing (1) that there was sufficient evidence to support the felony information and (2) that King's conduct was not a de minimis violation of HRS § 708-811.

In a memorandum opinion, the ICA concluded that there was probable cause to support the charge of burglary in the second degree. State v. King, 2016 WL 3077890, at *4, 138

7

Hawaiʻi 51, 375 P.3d 1289 (App. 2016) (mem.).  According to the

ICA, the plain language of HRS § 708-800 indicates that

> the Burglary 2 statute includes the situation at bar, as
> King is alleged to have intentionally entered Times
> Supermarkets' premises in defiance of a lawful order not to
> enter the premises, which had been personally communicated
> to King by an authorized person, i.e., Times Supermarkets'
> [loss prevention officer], with the intent to commit a
> crime therein against property rights.

Id. at *3.

The ICA declined to examine the legislative history of

HRS §§ 708-800, 708-811, and 708-814 because King "fail[ed] to

cite any legislative history supporting his interpretation and

fail[ed] to show that the plain language reading of HRS §§ 708-

800 and 708-811 would produce an absurd or unjust result that is

inconsistent with the policies of the Burglary 2 statute."  Id.

The ICA also did not address King's argument that the rule of

lenity favors a less-expansive interpretation of HRS §§ 708-800,

708-811, and 708-814(1)(b).

With respect to King's argument that his conduct

constituted a de minimis violation of HRS § 708-811, the ICA

observed that the circuit court "did not enter written findings

of fact and conclusions of law, and neither its oral ruling

[n]or its written order specifically state[s] whether the

court's ruling was based on King's probable cause argument or

his de minimis violation argument."  Id. at *6.  The ICA

concluded that the state of the record precluded it from

8

reviewing the circuit court's exercise of discretion.  Id.

Thus, the ICA remanded the case to the circuit court for

consideration of whether the felony information should be

dismissed on de minimis grounds.  Id.  Accordingly, the ICA

vacated the circuit court's Order Granting Motion to Dismiss.

Id.

## III. STANDARDS OF REVIEW

The sufficiency of a felony information is based on

"whether there is probable cause to believe that the offense

charged was committed and that the defendant committed the

offense charged."  HRS § 806-85(a) (2014).  Probable cause

determinations are reviewed by this court de novo.  State v.

Detroy, 102 Hawai'i 13, 18, 72 P.3d 485, 490 (2003).  "Statutory

interpretation presents questions of law that are reviewed de

novo under the right/wrong standard."  State v. Lei, 95 Hawai'i

278, 281, 21 P.3d 880, 883 (2001).

## IV. DISCUSSION

On certiorari, King challenges the ICA's decision that

there was probable cause to support the felony information.  The

essence of the State's theory as to probable cause is that

King's violation of a prior trespass warning issued by an

authorized agent of Times Supermarket pursuant to HRS § 708-

814(1)(b) (2014) constitutes a defiance of "a lawful order not

9

to enter" under HRS § 708-800 (2014) and that, therefore, King entered Times Supermarket McCully unlawfully on December 18, 2014.[8]  This unlawful entry, argues the State, can be the basis for charging King with burglary in the second degree under HRS § 708-811 (2014).  In response, King maintains that, because the prior trespass warning issued to him pursuant to HRS § 708-814(1)(b) does not qualify as a "lawful order" under HRS § 708-800, his conduct did not constitute an unlawful entry within the meaning of this statute; hence, there was no probable cause that his conduct constituted burglary in the second degree under HRS § 708-811.

In reviewing the sufficiency of the evidence to establish probable cause, the evidence, and all reasonable inferences that can be drawn therefrom, is viewed in favor of the felony information.  State v. Ganal, 81 Hawai'i 358, 367, 917 P.2d 370, 379 (1996).  Whether there is probable cause to support the felony information in this case depends on whether a prior trespass warning issued pursuant to HRS § 708-814(1)(b) is a "lawful order" under HRS § 708-800, the violation of which provides a basis for a second-degree burglary charge.

---

[8]     The felony information does not charge that King remained unlawfully in the McCully location of Times Supermarket.

It is undisputed that statutory construction begins with an examination of the plain language in order to determine and give effect to the legislative intent and purpose underlying the statute. State v. Alangcas, 134 Hawai'i 515, 525, 345 P.3d 181, 191 (2015); State v. McKnight, 131 Hawai'i 379, 388, 319 P.3d 298, 307 (2013). "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." State v. Arceo, 84 Hawai'i 1, 19, 928 P. 2d 843, 861 (1996) (quoting State v. Malufao, 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995)).

## A. Plain Language

HRS § 708-811 defines burglary in the second degree as follows:

> (1)    A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.
>
> (2)    Burglary in the second degree is a class C felony.

HRS § 708-811.  "Enter or remain unlawfully," as defined by HRS § 708-800,

> means to enter or remain in or upon premises when the person is not licensed, invited, or otherwise privileged to do so.  A person who, regardless of the person's intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless the person defies a lawful order not to enter or remain, personally communicated to the person by the owner of the premises or some other authorized person.  A license or privilege to enter or remain in a building which is only

11

partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.

HRS § 708-800 (emphasis added).  HRS § 708-814(1)(b) sets forth the offense of criminal trespass in the second degree as applied to commercial premises:

(1) A person commits the offense of criminal trespass in the second degree if:

. . . .

(b) The person enters or remains unlawfully in or upon commercial premises after a reasonable warning or request to leave by the owner or lessee of the commercial premises, the owner's or lessee's authorized agent, or a police officer; provided that this paragraph shall not apply to any conduct or activity subject to regulation by the National Labor Relations Act.

For the purposes of this paragraph, "reasonable warning or request" means a warning or request communicated in writing at any time within a one-year period inclusive of the date the incident occurred, which may contain but is not limited to the following information:

(i) A warning statement advising the person that the person's presence is no longer desired on the property for a period of one year from the date of the notice, that a violation of the warning will subject the person to arrest and prosecution for trespassing pursuant to section 708-814(1)(b), and that criminal trespass in the second degree is a petty misdemeanor;

(ii) The legal name, any aliases, and a photograph, if practicable, or a physical description, including but not limited to sex, racial extraction, age, height, weight, hair color, eye color, or any other distinguishing characteristics of the person warned;

(iii) The name of the person giving the warning along with the date and time the warning was given; and

>               (iv) The signature of the person giving the
>                    warning, the signature of a witness or
>                    police officer who was present when the
>                    warning was given and, if possible, the
>                    signature of the violator . . . .

HRS § 708-814 (emphases added).

Looking at the plain language of HRS § 708-814(1)(b), in order for a person to "enter[] or remain[] unlawfully in or upon commercial premises," he or she must fail to obey "a reasonable warning or request to leave" issued in accordance with the requirements of the statute. A "reasonable warning or request" is then given a specialized meaning that applies only "[f]or the purposes of this paragraph." HRS § 708-814(1)(b); cf. Kaanapali Hillside Homeowners' Ass'n ex rel. Bd. of Dirs. v. Doran, 114 Hawai'i 361, 372, 162 P.3d 1277, 1288 (2007) (reasoning that the legislature's use of the phrase "for the purposes of this section" in defining "planned community association" in HRS § 607-14 indicated that the definition of "planned community association" in HRS § 607-14 is different from the definition of that same phrase in chapter 421J of the HRS). Thus, a person's violation of a "reasonable warning or request to leave" means that the person has "enter[ed] or remain[ed] unlawfully in or upon commercial premises" under HRS § 708-814(1)(b), and it does not mean that the person has concurrently entered or remained unlawfully for purposes of other offenses, such as burglary, under Chapter 708 of the

Hawaii Penal Code that contains the "enters or remains unlawfully" element. As such, a "reasonable warning or request" is confined within the legal framework created by HRS § 708-814(1)(b) and is not the same as, or a subset of, a "lawful order" provided by HRS § 708-800. As applied in this case, failure to comply with a "reasonable warning or request" issued under HRS § 708-814(1)(b) would subject the noncomplying person to prosecution under HRS § 708-814(1)(b) (criminal trespass in the second degree), and such failure cannot be made the basis for charging second-degree burglary under HRS § 708-811.

This interpretation is supported by the nature of the information that may be contained by a "reasonable warning or request" issued pursuant to HRS § 708-814(1)(b). The trespass warning apprises the person to whom it is issued that "a violation of the warning will subject the person to arrest and prosecution for trespassing pursuant to section 708-814(1)(b), and that criminal trespass in the second degree is a petty misdemeanor." HRS § 708-814(1)(b)(i). By specifying exactly the subsection of HRS § 708-814 that the violator of the warning will be prosecuted under, it is clear that the trespass warning issued pursuant to HRS § 708-814(1)(b) does not at all contemplate a situation in which its violation would result in the prosecution of the violator for second-degree burglary if,

for example, a shoplifting is committed during a return to the premises. See id. Additionally, HRS § 708-814(1)(b) provides that the warning may contain a detailed physical description of the person to whom it is issued, the person's photograph, the person's name or any aliases, the name of the person who issued the warning, and the signatures of the person who issued the warning and of a witness or of a police officer. HRS § 708-814(1)(b)(ii)—(iv). Thus, a principal purpose of the HRS § 708-814(1)(b) trespass warning is to make it easier for commercial establishments to identify the person to whom the warning was issued so that, when the person reenters or again remains unlawfully on the commercial premises covered by the warning, that person can be immediately apprehended and charged with second-degree criminal trespass.

The plain language of HRS § 708-800 is also instructive. This statute defines "enter or remain unlawfully" without reference to the "reasonable warning or request" that HRS § 708-814(1)(b) authorizes to be issued with respect to commercial premises. Similarly, the legislature did not refer to the trespass warning in HRS § 708-814(1)(b) as a "lawful order." This is a further indication that HRS § 708-800 defines the phrase "enter or remain unlawfully" separately and distinctly from HRS § 708-814(1)(b). See Kaanapali Hillside,

114 Hawai'i at 372, 162 P.3d at 1288 (concluding that HRS § 607-14's definition of "planned community association" is different from the definition of that phrase in chapter 421J of the HRS since the HRS § 607-14 definition did not reference HRS chapter 421J).

### B. Legislative History and Intent

The foregoing interpretation is also confirmed by the legislative history of HRS § 708-814(1)(b). The predecessor of what is now HRS § 708-814(1)(b) was first added to the second-degree criminal trespass statute in 1979. 1979 Haw. Sess. Laws Act 201, § 1 at 422—23. The House Standing Committee Report noted that the addition was intended to make the unlawful entering or remaining upon commercial premises a petty misdemeanor instead of just a violation. H. Stand. Comm. Rep. No. 984, in 1979 House Journal, at 1632—33. The Report noted that, prior to the 1979 amendment, "entering or remaining unlawfully in commercial premises is simple trespass, a violation," and this made it

> extremely difficult for retailers and shopping centers to remove from their premises, solicitors and demonstrators who are harassing or inconveniencing customers or causing loss of sales, because being that such persons can only be charged with . . . a violation, the police will not place them under physical arrest without a penal summons being first obtained.

Id. at 1632—33. Obtaining a penal summons was a time-consuming process, and there was nothing the merchant or retailer could

do.  Id. at 1633.  Thus, the legislature added what is now HRS § 708-814(1)(b) to the second-degree criminal trespass statute in order to "effectively give retailers a means to remove undesirables because it would allow the police to place them under physical arrest."  Id.  The legislative history of the 1979 amendment to HRS § 708-814 never mentioned HRS § 708-800 or intimated that a "reasonable warning or request" issued under HRS § 708-814(1)(b) was intended to satisfy the "lawful order" element of HRS § 708-800.  See id.

In 1998, HRS § 708-814(1)(b) was again amended to define "reasonable warning or request" in response to the ICA's decision in State v. Sadler, 80 Hawai'i 372, 375, 910 P.2d 143, 147 (App. 1996), which held that HRS § 708-814(1)(b) "contemplates a warning or request contemporaneous with a person entering or remaining unlawfully on the premises."  1998 Haw. Sess. Laws Act 146, § 1 at 531; Conf. Com. Rep. No. 81, in 1998 Senate Journal, at 277.  This interpretation of HRS § 708-814(1)(b) meant that "in order to convict a person for criminal trespass in the second degree, the person must refuse a warning or request to leave that is made contemporaneously with the person's entering or remaining on the premises."  Conf. Com. Rep. No. 81, in 1998 Senate Journal, at 277.  This was viewed by the legislature as "burdensome on commercial establishments

because owners and operators are unable to meaningfully evict trespassers who may interfere with business and commit property crimes." Id. Thus, the 1998 amendment to HRS § 708-814(1)(b) was intended to allow commercial establishments to issue a "reasonable warning or request" to leave with an effective period of up to one year, the violation of which would permit the prosecution of the violator for criminal trespass in the second degree regardless of whether a contemporaneous warning or request to leave is issued at the time the violator reenters or again remains unlawfully on the commercial premises covered by the warning. Id. In addition, the 1998 amendment particularized the guidelines on what information may be included in the warning. 1998 Haw. Sess. Laws Act 146, § 1 at 531.

Based on the legislative history of HRS § 708-814(1)(b), the overarching purpose for the enactment of HRS § 708-814(1)(b) was to create a discrete legal framework within which commercial premises could be protected from actions similar to those committed by King in this case.[9] The statute is

---

[9] The State argues that this court should consider decisions of the Court of Appeals of Washington in resolving this case. See State v. Kutch, 951 P.2d 1139, 1142 (Wash. Ct. App. 1998); State v. Morris, 210 P.3d 1025 (Wash. Ct. App. 2009). However, Washington's statutory scheme is significantly different from the operative statutory scheme in this case. In fact, Washington does not have a discrete commercial trespass statute that is similar to HRS § 708-814(1)(b). See generally Wash. Rev. Code Ann. ch.

(continued . . . )

essentially a prophylactic tool "to meaningfully evict trespassers who may interfere with business and commit property crimes."  Conf. Com Rep. No. 81, 1998 Senate Journal, at 777. Nowhere in HRS § 708-814(1)(b)'s legislative history was there any mention of burglary, much less an expression that the legislature intended for a "reasonable warning or request" issued pursuant to HRS § 708-814(1)(b) to satisfy the "lawful order" requirement of HRS § 708-800.[10]  Nor was there an indication that the legislature intended to create a brand-new precursor to second-degree burglary that commercial property owners and law enforcement could use pursuant to their discretion.  If such a severe escalation were intended by the

_____

(continued . . .)
9A.52.  Thus, the holdings announced by the Washington cases cannot be meaningfully applied here.

[10]     The illogicality in treating a "reasonable warning or request" as satisfying the "lawful order" requirement of HRS § 708-800 and, thus, transforming the breach of a warning into a precursor to second-degree burglary is also demonstrated by examining the nature of the conduct that may result in the issuance of a "reasonable warning or request."  Notably, the issuance of a "reasonable warning or request" under HRS § 708-814(1)(b) is not contingent on the commission of illegal activity on the commercial premises; rather, such a warning may be issued for a variety of reasons, including legal conduct, with a view of removing "undesirables" from commercial premises.  See HRS § 708-814(1)(b); H. Stand. Comm. Rep. No. 984, in 1979 House Journal, at 1633.  For example, a person need not shoplift or harass on the premises in order to allow the commercial premises to issue an HRS § 708-814(1)(b) warning; the person may be excluded from the commercial premises simply because he or she is an "undesirable[]."  See HRS § 708-814(1)(b); H. Stand. Comm. Rep. No. 984, in 1979 House Journal, at 1633.  In instances where the trespass warning is issued for reasons other than prior illegal conduct, the recipient's reentry on the commercial premises, if coupled with intent to commit a crime against a person or property rights, would be subject to prosecution as a felony offense.  Thus, the recipient could be prosecuted for second-degree burglary because he or she violated a trespass warning issued based on a previous act that was not illegal.

19

legislature, it would have voiced that result in the language of the statute and the legislative history in more definite terms. Indeed, in instances where the legislature has intended to elevate specified conduct to felonies, it has expressly reflected that intent in the language of the statute. See HRS § 708-831(1)(c) (2014) (theft of aquacultural products); id. § 708-831(1)(d) (2014) (theft of agricultural equipment or products exceeding $100 in value); id. § 708-835.5 (2014) (theft of livestock); id. § 708-835.7 (2014) (theft of copper).[11]

**C. The Felony Information is Not Supported by Probable Cause**

Thus, the violation of a "reasonable warning or request" issued pursuant to HRS § 708-814(1)(b) is not a "defi[ance] of a lawful order" under HRS § 708-800; hence, the violation of a "reasonable warning or request" cannot be made a vehicle for a second-degree burglary charge under HRS § 708-811.

---

[11]    Construing a "reasonable warning or request" issued pursuant to HRS § 708-814(1)(b) as satisfying the "lawful order" element of HRS § 708-800 may result in an enforcement regime that could be abused based on the discretion of owners of commercial premises. For example, there may be situations in which owners of commercial premises would not act immediately to arrest a person who violates a prior HRS § 708-814(1)(b) trespass warning and wait for some indicia that the violator of the warning intends to commit shoplifting or another qualifying offense on the premises before effectuating arrest in order to escalate the offense from second-degree criminal trespass to second-degree burglary. Such a course of action may prove attractive given the severity of the punishment for second-degree burglary, i.e., up to five years of imprisonment, HRS § 706-660(1)(b) (2014), as compared to the punishment for second-degree criminal trespass, i.e., up to thirty days of incarceration, HRS § 701-107(4) (2014).

In this case, because the felony information charging King with second-degree burglary is based on King's violation of a prior trespass warning issued under HRS § 708-814(1)(b), there is no probable cause to support the felony information.  At most, King should have been charged with second-degree criminal trespass and fourth-degree theft.[12]

### V. CONCLUSION

Accordingly, we hold that the ICA erred in vacating the circuit court's Order Granting Motion to Dismiss because the circuit court did not err in concluding that there was no probable cause to support the felony information.  Hence, the ICA Judgment on Appeal is vacated, and the circuit court's Order Granting Motion to Dismiss is affirmed.

| | |
|---|---|
| Jason M. Kramberg and<br>Jon N. Ikenaga<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Stephen K. Tsushima<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



---

[12]     King also argues that the rule of lenity should be applied in construing the statutes involved in this case and that the rule announced in State v. Modica, 58 Haw. 249, 567 P.2d 420 (1977), prohibits the State from charging him with a felony offense where his conduct could also be punished under two misdemeanor offenses.  It is unnecessary to address these contentions in light of our resolution of this case.  King does not challenge the ICA's resolution of whether his conduct constituted a de minimis violation of HRS § 708-811.