[No. 40302.    Department One.    October 2, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. GILBERT ASHBY, *Appellant.*\*

*Benjamin N. Brunner,* for appellant.

*Lincoln E. Shropshire* and *F. James Gavin,* for respondent.

McGOVERN, J.—By separate informations, Gilbert Ashby was twice charged with having committed the crime of grand larceny. The cases were consolidated for trial, and he now appeals from the judgment and sentence entered upon each of the jury verdicts finding him guilty as charged.

He first challenges the sufficiency of the evidence to sustain his conviction of having "willfully, knowingly and

\*Reported in 459 P.2d 403.

feloniously, and with intent to deprive the owner thereof . . . [receiving] and [concealing] and [withholding]" certain designated personal property of the Webb Logging Company, knowing that property to have been stolen. More specifically, he avers that there was no evidence proving that he had in fact received, possessed or exercised control over the stolen property and that in the absence of such proof his conviction cannot stand.

Our examination of the record discloses substantial evidence showing that he in fact purchased the stolen property from the thief. The state's principal witness, Clifford Stone, after admitting that he stole the property, further testified as follows:

Q. What did you do after you took these items of personal property, Mr. Stone, what did you do with them? A. Sold them. Q. Who to? A. Gilbert Ashby. . . . Q. When did you sell them to Mr. Ashby? A. I think the day after, the day after the night they were taken. Q. And how—did you have any conversation with him in reference to these articles that you sold him? A. We talked about them. He asked me where they had come from and I told him. Q. Did you tell him that you had stolen the articles from the Webb Logging Company? A. Yes. Q. Was that before or after you sold them to Mr. Ashby? A. It was before I sold them to him.

While such testimony did not specifically aver that defendant had taken physical possession of the stolen property, nonetheless it was reasonably susceptible of such an inference. It was, therefore, sufficient to take the question to the jury of whether or not defendant had in fact *received* the goods as charged in the information.

■ Additionally, neither a manual possession nor an actual touching of the goods by the receiver is a necessary prerequisite to the *receipt* of stolen goods as that term is used in our larceny statute. RCW 9.54.010(5). Control is the criterion. A purchaser of stolen goods may be said to have received the goods when they are delivered at his direction to a third person or purposefully left with the seller, even though the purchaser never acquired actual physical possession of the goods. Leading authorities on the

subject satisfy us that the best and "prevailing rule at common law and in most jurisdictions is that actual physical possession is not a requisite of receiving. Possession may be constructive. Intentional control over the goods by the receiver is sufficient." *State v. Bozeyowski,* 77 N.J. Super. 49, 185 A.2d 393 (1962), *cert. denied,* 374 U.S. 851, 10 L. Ed. 2d 1071, 83 S. Ct. 1916 (1963). *Also see* 45 Am. Jur. *Receiving Stolen Property* § 3 (1943); *Polansky v. State,* 205 Md. 362, 109 A.2d 52 (1954); 2 Wharton, Criminal Law and Procedure, *Receiving or Concealing Stolen Goods* § 569 (12th ed. 1957).

Under the evidence, the jury could have found that the defendant had actual or constructive possession of the stolen goods, either of which finding is legally sufficient to support the conviction. The assignment of error is therefore without merit.

By the second information, defendant was charged with the larceny of grain feed having a value of more than $75, and the property of Newhouse Farms. He attacks the conviction of that charge on the basis that the evidence relating to the stolen feed was not sufficient to prove that its value was in excess of $75 as required by the applicable statute, RCW 9.54.090(6). The record indicates otherwise.

Mr. John Newhouse, one of the owners of Newhouse Farms, testified to the quantity and value of the missing bulk feed as follows:

[W]ell, from two to five ton that was gone. Q. Two to five tons were gone? A. I can't be accurate how much was ground but it has to be in that range someplace. Q. Has to be in that range? A. According to past performance and everything, yes. Q. Mr. Newhouse, do you know the value of a ton of this ground grain that you are speaking of, what would be the reasonable value of a ton? A. We charged it out at $55. A. $55 a ton? A. That includes the original cost and loss in grinding. Q. So a minimum that you were missing, you say two tons, that would be approximately $110. A. Yes. Q. Would that be correct? A. That's about what it would be.

His brother Albert Newhouse, another Newhouse Farms owner, testified to the same subject. He said:

Q. What would you say you believe to be a reasonable amount of grain that was missing? A. Just from my own opinion I thought probably three and a half tons. . . . Q. And what is the reasonable value per ton, would you say, of this grain? A. At that time about $55.

■ We note that the question relating to the sufficiency of the evidence to establish the value of the grain is raised for the first time on appeal. No further consideration is given to the assignment of error for that reason. Questions not raised at the trial level will not be considered for the first time on appeal. *State v. McDonald,* 74 Wn.2d 474, 445 P.2d 345 (1968); *State v. Garrison,* 71 Wn.2d 312, 427 P.2d 1012 (1967); *State v. Silvers,* 70 Wn.2d 430, 432 P.2d 539 (1967).

It is then claimed that the trial court should have granted defendant a new trial on the basis of recently discovered evidence which could not have been discovered with reasonable diligence before, and produced at the trial. The evidence referred to would have been elicited from William Harvey King, said by Clifford Stone as being a passenger in an adjoining vehicle at the time of the grain theft. Mr. King indicates by affidavit that he would have contradicted that testimony.

The motion for new trial was properly denied. The record is clear that defendant's trial counsel, different from counsel on appeal, was well aware of the existence of Mr. King at the time of trial. On the occasion of the posttrial motion that fact became apparent from the oral examination of trial defense counsel.

THE COURT: Just answer this question: Is what you are saying, Mr. Porter, is that you didn't know that this testimony was coming out, but you weren't surprised when it did? A. That's precisely what I have been trying to tell everybody, Your Honor. Q. Why did you think that Stone was—did you think that Stone was going to implicate Billie King? A. Did I think Stone was going to implicate Billie King? Q. Yes. A. I thought that somewhere down the line he probably would. . . . Q. In other words, you weren't surprised at Stone's testimony?

A. No, sir, I wasn't. . . . Q. Or Stone—I'll put it this way: You had reason to believe that Stone would implicate Littlejohn and King? A. Yes. MR. ROBINSON: In this case? Q. In this case? A. Yes, I felt there was a possibility, a very good possibility that it might come about that way. Q. And you knew that prior to the time of the trial? A. Yes, I did.

The record reveals further that defendant's counsel interviewed Mr. King before the trial commenced.

Defendant thus failed to demonstrate that he was entitled to another trial on the basis of newly discovered evidence. To do so it would have been necessary for him to show that the new evidence would probably have changed the result of the trial, that it had been discovered since trial, could not have been discovered before, and that it was not merely cumulative or impeaching. *State v. Franks*, 74 Wn.2d 413, 445 P.2d 200 (1968); *Kurtz v. Fels*, 63 Wn.2d 871, 389 P.2d 659 (1964).

And, finally, defendant argues that he is entitled to a new trial because the prosecuting attorney commented to the jury on the failure of the defendant to testify. Although the reference was indirect, defendant states that it was sufficiently clear and reasonably certain to direct the jury's attention to the fact.

During closing argument the prosecutor said:

So I say it is not disputed that he sold those articles to the defendant, Mr. Ashby. Members of the jury, that testimony also is undisputed. Consider it just for a few moments. Has anyone disputed that particular evidence that those articles were sold to Mr. Ashby?

Defendant reasons that, since he is the only person who could have disputed that fact, the comment constituted a reference to his failure to testify. He states that he is constitutionally entitled to refrain from testifying and that his exercise of that right cannot be the subject matter of comment by the prosecutor.

We are of the view that the prosecutor's statement was not such that it necessarily drew the attention of the jury to the fact that defendant did not testify. Persons

other than defendant could have conceivably denied that Clifford Stone sold the property in question to defendant. Such testimony could have come from another who ostensibly bought the articles in good faith, who observed the sale to a different person or who might testify that he saw the items destroyed prior in time to the alleged sale to defendant. The prosecutor's comment could have applied equally well to them.

The rule enunciated by this court in *State v. Litzenberger*, 140 Wash. 308, 248 P. 799 (1926), that "Surely the prosecutor may comment upon the fact that certain testimony is undenied, without reference to who may or may not be in a position to deny it; and, if that results in an inference unfavorable to the accused, he must accept the burden, because the choice to testify or not was wholly his" is still good law.

Further, any prejudicial effect to the defendant that may have been occasioned by the prosecutor's comment was eliminated by the trial judge when he instructed the jury that "Every defendant in a criminal case has the absolute right not to testify. You must not draw any inference of guilt against the defendant because he did not testify."

The defendant received a fair trial. The judgment and sentence on each jury verdict of guilt is affirmed.

HUNTER, C. J., FINLEY and HAMILTON, JJ., and COLE, J. Pro Tem., concur.