[No. 694-1.    Division One—Panel 2.    November 22, 1971.]

J. O. Thomas, *Respondent*, v. Grange Insurance Association, *Appellant*.

*Merrick, Hofstedt, Schumm & Lindsey, H. Roland Hofstedt,* and *Linda L. Dawson,* for appellant.

*Davies, Pearson, Anderson & Gadbow* and *Wayne J. Davies,* for respondent.

Swanson, J.—If one injured in an automobile by a negligent driver obtains a judgment for damages against that driver and subsequently against the driver's insurance company, but that insurance company becomes insolvent and fails to pay, is the negligent driver an "uninsured motorist" so that the one injured may be compensated by his own insurance company? That is the primary question raised on this appeal, and we answer it in the affirmative.

The operative facts are these: On January 6, 1965, respondent Thomas was injured in an automobile accident with one Clair. On November 21, 1966, Thomas received a judgment for $7,000 against Clair. Subsequently, on May 22, 1967, Thomas obtained a default judgment on a writ of garnishment against Clair's insurer, and on September 1, 1967, Clair's insurer was found to be insolvent. Thomas then sought payment from appellant Grange Insurance Association, his own insurer. The trial court determined that the post-judgment insolvency of Clair's insurer made Clair the driver of an "uninsured automobile" within the meaning of respondent's insurance policy, and held that respondent was entitled to damages in an amount to be determined in accordance with the arbitration procedures set up in the policy. The trial court also concluded that any violations of policy conditions by respondent were excused and had not prejudiced his insurer. Respondent's insurer Grange Insurance Association appeals from this judgment.

In finding that respondent Thomas was protected from the insolvency of Clair's insurer by reason of the uninsured motorist endorsement in his policy with appellant, the trial court relied upon the recent opinion of our state Supreme Court in *Tsapralis v. Public Emps. Mut. Cas. Co.*, 77 Wn.2d 581, 464 P.2d 421 (1970). We agree that this case is controlling of the issue.

In *Tsapralis*, the uninsured motorist provision construed by the court is substantially the same[1] as the provision before us which defines an "uninsured automobile" to mean:

an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance applicable at the time of the accident . . .

In *Tsapralis*, the insured, injured in an automobile accident

---

[1] In *Tsapralis*, 77 Wn.2d at 582, the court indicated that the term "uninsured" automobile was defined in the policy before it as

an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident . . .

on November 1, 1963, contended that the uninsured motorist provision contained in his insurance policy protected him when the negligent driver's insurer became insolvent on November 5, 1965. In upholding this contention, the court stated its reasoning in part as follows, at page 582:

> In considering the insurance contract before us, we interpret it to give effect to the intent of the parties and that intention normally is ascertained largely from the language employed by them. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.,* 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954). But if the language of the policy is reasonably susceptible to more than one interpretation, then we apply that meaning which is most beneficial to the insured. *It may be interpreted in accordance with the way it would be understood by the average man purchasing insurance. Ames v. Baker,* 68 Wn.2d 713, 415 P.2d 74 (1966); *Thompson v. Ezzell,* 61 Wn.2d 685, 379 P.2d 983 (1963).

Applying those principles to the term "uninsured" automobile as defined in the insurance contract before us, we believe that a reasonable and proper interpretation placed upon it by an insured would lead him to conclude that when the tort-feasor's insurance carrier is unable to pay his valid claim, then there was no insurance "applicable at the time of the accident." An injured party is as much unprotected by a tort-feasor's insurance carrier which becomes insolvent subsequent to the injury as is one injured by a tort-feasor whose insurance carrier became insolvent immediately before the accident. It is not the moment of impact that an insured logically considers of consequence in contracting for protection against an uninsured motorist—rather, it is the ability of the tort-feasor's insurance carrier to respond in damages for a lawful claim that is the realistic and natural concern of the insured. If the tort-feasor's legal inability to pay that lawful claim occurs after the accident, then that legal inability (insolvency here) should be said, on a relation back in time theory, to have existed at the time of the accident.[2]

---

[2]The court, in *Tsapralis,* 77 Wn.2d at 585, took cognizance of but did not rest its opinion upon the fact that in 1967 the state legislature enacted RCW 48.22.040 which provides in part:

(1) The term "uninsured motor vehicles" with reference to coverage offered under any insurance policy regulated under this chap-

We conclude that the *Tsapralis* case is indistinguishable from the one before us.[3] The trial court properly decided that the legal inability of Clair's insurer to pay Thomas made Clair, on a "relation back in time" theory, the driver of an automobile on which there was no insurance "applicable at the time of the accident," and, consequently, respondent may turn to his own insurer, the appellant, for damages in accordance with the uninsured motorist provision of his policy.

Two additional contentions of appellant remain. Appellant argues that respondent should be denied recovery because of his failure to comply with certain conditions contained in the uninsured motorist endorsement of the policy requiring respondent to give timely notice of the accident and timely notice of any legal action commenced by respondent, and other conditions. Appellant points out that the uninsured motorist endorsement expressly provides that compliance with such conditions is a condition precedent to an action for damages against it. Appellant directs our attention to the rule enunciated in *Sears, Roebuck & Co. v. Hartford Acc. & Indem. Co.*, 50 Wn.2d 443, 454, 313 P.2d 347 (1957), to the effect that where notice of the accident and forwarding of any "demand, notice, summons or other process" are specifically made a condition precedent to any action against the insurer, the failure to comply with them in a reasonably timely manner will release the

ter shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.

Appellant points out that this statute was enacted subsequent to respondent's accident with Clair, and that the statute should not now be applied retroactively. We do not reach this contention inasmuch as the court in *Tsapralis* did not rely upon this statute nor do we.

[3] Appellant seeks to distinguish *Tsapralis* on the ground that in the instant case, unlike the situation in *Tsapralis*, the insolvency of the tort-feasor's insurer did not occur until after judgment had been obtained against it. We are not persuaded that this is a distinction of substance. It in no way changes the "realistic and natural concern of the insured" identified in *Tsapralis*.

insurer from all obligations under the insurance contract, even though it may have suffered no prejudice.

[ ] The trial court found that respondent did not give written notice of the accident to appellant until June, 1967, although he had given oral notice of the accident to appellant's agent 2 or 3 days after the accident. Nevertheless, the trial court concluded that any failure of respondent to comply with the conditions in the uninsured motorist endorsement was excused because respondent had no knowledge that the tort-feasor's insurance carrier would become insolvent, and appellant was not prejudiced by such noncompliance. We agree. The *Sears* case is inapposite. This is so because the notice conditions with which the plaintiff failed to comply in *Sears* were immediately operative because noncompliance with them would defeat their purpose, namely, to allow the insurer to make an investigation of the accident in order to prepare a defense and to afford the insurer an opportunity to control the litigation.[4] *Sears,* 50 Wn.2d at 451; *Kidwell v. Chuck Olson Olds., Inc.,* 4 Wn. App. 471, 481 P.2d 908 (1971). That is not the situation before us. No purpose of the conditions in the uninsured motorist endorsement provision of respondent's insurance policy would be served by an attempt on respondent's part to comply with them prior to any reasonable expectation of the existence of an uninsured motorist. Further, such conditions would become operative only when the insured, acting as a reasonably prudent person, believed that he would have an uninsured motorist claim, and there is nothing in the record to indicate that respondent did not comply with the conditions, insofar as practicable, when he did have reason to believe he would have such a claim, namely, when he discovered the insolvency of the tort-feasor's in-

---

[4] An additional distinctive aspect of *Sears,* 50 Wn.2d at 452, is that the plaintiff insured was a corporation seeking to be excused from complying with the provisions in its insurance policy because it had no knowledge that it was insured. The court said that the failure to comply with the conditions because "the corporate mind has no knowledge that the left hand is clutching an insurance policy" was "totally inexcusable."

surance carrier.[5] *See Abraham v. Great Am. Ins. Co.*, 21 Ohio Misc. 170, 256 N.E.2d 265 (1969); *Bass v. Aetna Cas. & Sur. Co.*, 199 So. 2d 790 (Fla. 1967).[6] We conclude that the trial court's interpretation of the meaning of the conditions in the uninsured motorist endorsement in respondent's insurance policy was "in accordance with the way it would

[5]This conclusion is somewhat analogous to the rule in this jurisdiction that where medical malpractice is asserted to have occurred through the negligent leaving of foreign substances or articles in a body after the closing of a surgical wound, the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care for his own health and welfare, should have discovered the presence of a foreign article or substance in his body. *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969). *See also Janisch v. Mullins*, 1 Wn. App. 393, 461 P.2d 895 (1969), *petition for review dismissed per stipulation*, 78 Wn.2d 997 (1970).

Analogies may also be found without leaving the area of insurance law. *See, e.g.,* G. Couch, Cyclopedia of Insurance Law § 49:136 (2d ed. R. Anderson 1965), where it is stated:

> Where liability is based upon an uninsured motorist provision a delay in giving notice will be excused where the delay was the result of efforts to determine whether there was coverage, the beneficiary having exercised due diligence in seeking to ascertain such information and giving notice to the insurer upon acquiring it.

(Footnote omitted.) *See also* G. Couch, Cyclopedia of Insurance Law § 49:131 (2d ed. R. Anderson 1965), where the author, while also citing authority *contra,* observes:

> There is authority that if the insured acts as a reasonably prudent man in determining that no claim will arise under the policy, failure to give notice until such a claim is asserted does not breach the condition of the policy requiring notice "as soon as practicable."

(Footnote omitted.) *See State Farm Mut. Auto. Ins. Co. v. Murnion,* 439 F.2d 945 (9th Cir. 1971).

[6]The cited cases rested primarily on a showing that the insurer had suffered no prejudice by the insured's reasonable delay in complying with conditions in the uninsured motorist provision of his policy. In the case at bar, we do not find it necessary to retreat from the announced rule in *Sears* that the failure of the insured to comply with conditions expressly made precedent to any action against the insurer will relieve the insurer of liability even though it may have suffered no prejudice. We have concluded only that an insured need not comply with conditions precedent to a claim against the insurer under an uninsured motorist provision *until* it is reasonable that he do so, namely, when he discovers that he has an uninsured motorist claim, or reasonably should have discovered it.

be understood by the average man purchasing insurance." *Tsapralis*, 77 Wn.2d at 583.

Finally, appellant contends that respondent may not complain for damages because he is guilty of laches in failing to collect his judgment against the tort-feasor's insurance carrier prior to its insolvency. Nothing appears in the record to support this contention. Further, this argument was not presented to the trial court and will not be considered now for the first time on appeal. *Daniels v. Pacific Northwest Bell Tel. Co.*, 1 Wn. App. 805, 807, 463 P.2d 795 (1970); *State v. Ashby*, 77 Wn.2d 33, 36, 459 P. 2d 403 (1969), and cases cited therein.

Affirmed.

FARRIS, A.C.J., and JAMES, J., concur.