[No. 36923-1-II.   Division Two.   June 30, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. DARNELL LARRY MORRIS, *Appellant*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Melody M. Crick, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — On March 30, 2007, Macy's loss prevention officers, via closed circuit camera, saw Darnell Morris take two watches valued at $205.02 from a clearance display at the Tacoma Mall Macy's and leave without paying for them. Because Macy's had revoked Morris's right to enter the store for one year ("trespassed" him) on February 6, 2007, the Pierce County prosecuting attorney's office charged Morris with one count of second degree burglary, RCW 9A.52.030(1). A jury found Morris guilty as charged, and the trial court sentenced him to 43 months, the high end of the standard range for an offender score of 7.

¶2 On appeal, Morris asserts that the prosecutor deprived him of a fair trial by commenting on his right to remain silent in violation of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Consitution. In a pro se statement of additional grounds (SAG),[1] Morris contends that (1) the State should have charged him with only trespassing and misdemeanor theft and (2) the trial court miscalculated his standard range using an offender score of

[1] RAP 10.10.

7 when his correct score is 5. The prosecutor's mere mention in his closing argument that the evidence presented by the witnesses was uncontradicted is an argument based on the evidence, not a comment on Morris's exercise of his right to remain silent. Moreover, the State properly charged Morris with second degree burglary because Morris was prohibited from entering Macy's and, while unlawfully inside Macy's, intended to commit the crime of theft. Finally, Morris's offender score was properly calculated as 7. Accordingly, we affirm.

## Discussion

### PROSECUTORIAL MISCONDUCT

¶3 Morris argues that "the prosecutor committed misconduct [by] both commenting on [his] exercise of his right to be free from self-incrimination and improperly shifting a burden of proof to the defense in violation of due process." Br. of Appellant at 4. In making this argument, Morris relies on the following sentence at the end of the prosecution's five-page closing argument: "What I'm asking you to do is to deliberate that there has been no real contradiction on any of these facts and to come back with a verdict of guilty." 4 Report of Proceedings (RP) at 163. The defense counsel did not object. Instead, in closing argument, she argued that the State's witnesses had done a "lovely job" of contradicting themselves and pointed to each contradiction for the jury to consider during its deliberations. Specifically, Morris's defense counsel stated:

> The prosecutor is going to say, well, you know, nothing has been contradicted, and, you know, we have all of this lovely evidence. It is not contradicted. He is guilty. That's not the way that the law works.
>
> You, as jurors, are given a very peculiar job and a very special context to look at evidence in. The context is . . . that Mr. Morris is innocent. He was when he walked in last week. He still is. It doesn't matter that there were no defense witnesses. It doesn't matter about anything else, that there wasn't any

direct maybe contradiction of testimony; but, you know, the State's witnesses did a really lovely job of contradicting themselves. What does the defense need to do?

4 RP at 163-64.

¶4 Absent a timely and proper objection, a prosecutor's alleged misconduct cannot be raised on appeal unless it was so flagrant and ill intentioned that no curative instruction could have obviated the resulting prejudice. *State v. Warren*, 165 Wn.2d 17, 29, 195 P.3d 940 (2008). A prosecutor may state that certain testimony is not denied, without reference to who could have denied it, *State v. Ashby*, 77 Wn.2d 33, 37, 459 P.2d 403 (1969), and may comment that evidence is undisputed. *State v. Crawford*, 21 Wn. App. 146, 584 P.2d 442 (1978), *review denied*, 91 Wn.2d 1013 (1979); *accord State v. Sutherland*, 24 Wn. App. 719, 604 P.2d 957 (1979), *rev'd on other grounds*, 94 Wn.2d 527, 617 P.2d 1012 (1980). Our Supreme Court first enunciated this rule in *State v. Litzenberger*, 140 Wash. 308, 311, 248 P. 799 (1926), stating:

> Surely the prosecutor may comment upon the fact that certain testimony is undenied, without reference to who may or may not be in a position to deny it and, if that results in an inference unfavorable to the accused, he must accept the burden . . . because the choice to testify or not was wholly his.

¶5 More recently, in *State v. Brett*, 126 Wn.2d 136, 176, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996), our Supreme Court rejected the argument that *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), rendered *Litzenberger* no longer viable, stating:

> Brett asserts the standards set forth in *Ashby, Crawford,* and *Litzenberger* are no longer viable because they were decided prior to *Doyle.* . . . We disagree.

¶6 We agree with the State that it was no more improper for the prosecutor to comment on the consistency of the testimony of the six witnesses who testified in the State's case-in-chief than it was for defense counsel to point out the

inconsistencies in that same testimony. Moreover, the court instructed the jury that "[t]he defendant is not compelled to testify, and the fact that the defendant has not testified cannot be used to infer guilt or prejudice him in any way." Clerk's Papers at 33. We presume that the jury followed the court's instructions. *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001); *see also State v. Jackson*, 145 Wn. App. 814, 187 P.3d 321 (2008). Accordingly, Morris's claim that the prosecutor's reference to the consistency of the testimony of State witnesses amounts to a comment on his right to remain silent fails.

STATEMENT OF ADDITIONAL GROUNDS

¶7 In his SAG, Morris asserts two grounds. First, he argues that because Macy's is a place open to the public, the State should have charged him with trespassing and misdemeanor theft instead of second degree burglary. And second, he challenges the calculation of his offender score, asserting, as he did at sentencing, that the trial court had miscalculated his offender score as a 7 when it should have been a 5.

¶8 But Macy's revoked Morris's invitation to enter the store when it "trespassed" him for shoplifting on February 6, 2007. Under the trespass notice, Morris was prohibited from entering any Macy's for one year, until February 7, 2008. Morris went to the Macy's located inside the Tacoma Mall on March 30, 2007, he was entering without the owner's permission and was trespassing. Perhaps more importantly, when Morris placed the watches up the right sleeve of his coat and then into his front pocket, he remained in the store intending to commit the crime of theft; and he subsequently walked past numerous cash registers and out the door without paying for the concealed items. When the Macy's loss prevention personnel apprehended and confronted Morris, he admitted taking the watches, intending to sell them because he had no money. This evidence is sufficient to establish that Morris entered or remained in Macy's with an intent to commit a crime

(theft) and to prove second degree burglary beyond a reasonable doubt. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).[2]

¶9 Morris next argues that because he was crime-free from June 22, 1995 until June 25, 2000, the trial court should have calculated his offender score as a 5 rather than as a 7.[3] Morris mistakenly believes that his crime-free period is calculated from the date of the offense rather than the date of his release from confinement. RCW 9.94A-.525(2)(c);[4] *State v. Olson*, 148 Wn. App. 238, 198 P.3d 1061 (2009) (Class C prior felony convictions other than sex offenses shall not be included in the offender score if, *since the date of release from confinement*, the offender has been crime-free for five years.). But the criminal history set out in Morris's judgment and sentence indicates that on July 11, 1995, Morris was sentenced for a conviction of petty theft in California, which he committed on June 22, 1995, and on September 8, 2000, Morris was sentenced for a conviction of attempted first degree robbery in Washington, which he committed on June 25, 2000. Accordingly, despite Morris's argument to the contrary, he did not spend five years in the community crime-free, his California forgery

---

[2] A person commits second degree burglary if, "with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1).

[3] At sentencing the State presented exhibits 1 through 12 as proof of Morris's criminal history. Morris's counsel challenged the sufficiency of the documents, exhibits 9 and 10, offered to prove Morris's California convictions, arguing that they were not judgment and sentences proving that Morris has those convictions in California and that, therefore, his offender score should be calculated as a 5 on that basis. The sentencing court reviewed the exhibits and agreed with the State that the documents regarding the 1993 plea-based forgery conviction did contain an abstract to the judgment and sentence and that Morris's prior conviction for unlawful possession of a controlled substance (cocaine) was established by a docket entry listing the sentence imposed.

[4] RCW 9.94A.525(2)(c) provides:

Except as provided in (e) of this subsection, class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, *or entry of judgment and sentence,* the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

(Emphasis added.)

934

and unlawful possession of a controlled substance convictions did not wash out, and the trial court properly calculated his offender score as 7.

¶10 We affirm.

Van Deren, C.J., and Penoyar, J., concur.