

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34881-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOMMY D. CANFIELD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Tommy Canfield appeals his convictions for unlawful possession of a firearm, possession of a stolen firearm, possession of methamphetamine with a firearm enhancement, and obstructing a public servant. We reverse the last charge, affirm the remaining convictions, and remand for further proceedings.

FACTS

Mr. Canfield was arrested in the town of Asotin on the basis of an outstanding arrest warrant. Law enforcement officers saw Mr. Canfield lying down inside his pickup truck when they made contact to arrest him on the warrant. One officer called out "Tommy" and Mr. Canfield sat up. He attempted to start the truck despite an officer's direction to keep his hands in sight. He then attempted to leave the truck and was detained.

The officers sought verification of his identity, but Mr. Canfield provided a false name and denied that he was Tommy Canfield. Officers eventually identified him, after checking with dispatch, through his tattoos. When an officer tried to handcuff him prior to removing him from the scene, Mr. Canfield temporarily delayed the process by locking his hands in an effort to prevent the handcuffing. He was then placed in a patrol car without first being searched.

During the drive to the jail, Mr. Canfield was repeatedly moving around and "squirming" in the back seat to the point that he was told to sit still because the officer feared he was attempting to release his seatbelt or the handcuffs. He continued his movements, attempting to get his hands in his back pockets, even after arriving at the jail. Officers then searched his pockets and discovered two packets of suspected controlled substances. They also discovered eight gun cartridges in his front pockets. He denied having a gun and insisted that he had the ammunition for an unspecified different reason. When the officer checked the back seat of the patrol vehicle, she discovered a "very large" and fully loaded .357 Colt Python revolver underneath the divider between the front and rear seats.

The gun's owner later identified it as one stolen from his home. Officers unloaded the gun and placed all 14 shells in a single bag. They testified that the bullets found in Mr. Canfield's pockets were identical to those removed from the gun.

2

The case went to jury trial. The officer testified that she always searched the vehicle before her shift and again whenever an arrestee leaves the vehicle. The gun was not present before Mr. Canfield was placed in her car. The court denied motions to dismiss the stolen firearm and obstructing charges for insufficient evidence. The defendant did not testify and the defense called no witnesses. The prosecutor suggested that the court instruct the jury that it could not consider the defendant's failure to testify. However, defense counsel objected and the prosecutor acceded to that decision. The court did not instruct the jury on that topic. The parties stipulated to the instructions given by the court.

In closing argument, the prosecutor twice postulated possible defense arguments and noted that no testimony had been presented in support of either one. In closing, defense counsel made a "mystery bullet" argument, speculating that there might have been a mix-up resulting in a mystery bullet being removed from evidence and placed elsewhere. After noting in rebuttal that no evidence supported the theory, the prosecutor also pointed out that no explanation was given for the matching bullets found in Mr. Canfield's pockets. After again suggesting some possibilities, the prosecutor once more stated that jurors had heard no other explanation at trial.

The prosecutor told jurors that Canfield obstructed a public servant in three different ways—lying about his identity, trying to hide the evidence, and resisting handcuffing. Report of Proceedings at 275. Defense counsel denied that the actions

3

amounted to obstruction. In rebuttal, the prosecutor insisted that there were three separate actions that constituted obstructing. *Id*. at 291-292.

The jury returned verdicts of guilty on all four charges and also found a firearm enhancement on the controlled substance charge had been proven. In a separate hearing, the jury then heard evidence on an aggravating factor and concluded that each of the three felony offenses had been committed shortly after release from prison. At sentencing, the State calculated the offender score at 13 on the methamphetamine charge due to 10 prior felony convictions, 2 points for the other current convictions, and 1 point for being on community custody at the time of the new crimes. The prosecutor also posited a score of 12 for the weapons offenses. Defense counsel told the court that he agreed with the prosecutor's computation of the standard ranges for each offense.

The prosecutor sought an exceptional sentence by having all three felony offenses run consecutively to each other, and also noted that the firearm enhancement would run consecutively by law. Defense counsel argued against an exceptional sentence. The trial court imposed an exceptional sentence by running the two weapons offenses concurrent with each other, but consecutive to the controlled substance conviction. All time served prior to sentencing was applied to the obstructing count, which also was consecutive to the other sentences.

The court heard from Mr. Canfield that he had trained horses since he was 15. The court imposed standard mandatory legal financial obligations (LFOs), assessed a

$2,000 drug fine, and imposed discretionary LFOs totaling $1,010 for service fees and public defense costs.

Mr. Canfield timely appealed to this court. A panel considered the matter without hearing argument.

## ANALYSIS

This appeal presents numerous issues which we address in a different order than raised by appellant. In order, we consider whether the prosecutor committed misconduct in closing argument, whether a nexus was established between the firearm and the drug possession count, whether the offender score was properly calculated, whether there needed to be a unanimity instruction on the obstructing count, whether the LFOs were properly imposed, and whether appellate costs should be waived.

*Prosecutor's Closing Argument*

Mr. Canfield argues that the prosecutor violated his privilege to remain silent by commenting on different possible defense theories that were not supported by the evidence. Although the arguments did skate close to the line, there was no error.

The standards governing this challenge are well settled. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper

5

statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Prosecutors can properly draw reasonable inferences from the evidence admitted at trial and argue those inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991); *State v. Hale*, 26 Wn. App. 211, 216, 611 P.2d 1370 (1980). The prosecutor also can respond to the defense presentation and argue that the evidence does not support the defendant's theory of the case. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). "Mere appeals to jury passion and prejudice, as well as prejudicial allusions to matters outside the evidence, are inappropriate." *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). However, the defendant must object to the prosecutor's allegedly improper argument to preserve a claim of error unless the argument was so "flagrant and ill intentioned that no curative instructions could have obviated the prejudice." *Id.*

It has long been the rule in this state that the prosecutor can argue "that certain testimony is undenied, without reference to who may or may not be in a position to deny it." *State v. Litzenberger*, 140 Wash. 308, 311, 248 P. 799 (1926). Prosecutors may also comment on the defense's failure to present evidence on a particular issue if someone other than the defendant could have testified to the issue. *State v. Ashby*, 77 Wn.2d 33, 38, 459 P.2d 403 (1969).

Here, there were no objections raised at trial to the comments Mr. Canfield now challenges. Hence, he can establish misconduct only if the remarks were so ill intentioned that an objection could not have cured them. *Belgarde*, 110 Wn.2d at 507. Mr. Canfield has not satisfied that demanding standard.

First, it is important to note that the "mystery bullet" argument was created by the defense in closing argument and the prosecutor was quite free to point out that no evidence supported the claim. *Russell*, 125 Wn.2d at 87. A slightly different problem exists with respect to the other arguments.

In those instances, the prosecutor, without objection, speculated on certain possibilities and pointed out that no evidence supported the claims. Although in each instance that was a correct view of the evidence, it is still a potentially dangerous argument for the prosecutor to make. The court may not give an instruction on an affirmative defense over defendant's objection. *E.g.*, *State v. Coristine*, 177 Wn.2d 370, 300 P.3d 400 (2013) (error to give reasonable belief instruction over defense objection). Similarly, the State should not be suggesting defense arguments that the defense is not itself proposing. This comes close to suggesting that the defendant had an obligation to present evidence or argument; he does not. Here, no instructions were given and this case does not arise to the level of the unwanted defense at issue in *Coristine*. Moreover, a timely objection would have allowed the court to remind the jury that the defense bore

no burden. If there was any error here at all, it simply was not so prejudicial that it could not have been cured.[1]

Mr. Canfield has not established that the prosecutor's unchallenged arguments amount to prejudicial error. The misconduct claim is without merit.

*Nexus between Firearm and Controlled Substances*

Mr. Canfield next argues that the prosecutor failed to establish a nexus between the firearm and the controlled substances, thus contending that the firearm enhancement was improper. Since the evidence suggested that Mr. Canfield actually possessed the gun and the drugs at the same time, no nexus needed to be established.

Whenever a firearm enhancement is based on *constructive* possession of the weapon, there must be a showing of a nexus between the gun, the crime, and the defendant. *E.g.*, *State v. Brown*, 162 Wn.2d 422, 431-432, 173 P.3d 245 (2007); *State v. Schelin*, 147 Wn.2d 562, 567-568, 55 P.3d 632 (2002). That rule does not apply to situations of actual possession of a firearm during a crime. *See State v. Hernandez*, 172 Wn. App. 537, 544-545, 290 P.3d 1052 (2012), *review denied*, 177 Wn.2d 1022 (2013) (discussing cases).

---

[1] In light of the reversal of the obstructing count, comments by the prosecutor concerning that offense need not be separately addressed here.

Here, the defendant had actual possession of the firearm and the drugs at the same time—both items were on his person at the time he was placed in the police vehicle. The State presented circumstantial evidence that Mr. Canfield actually possessed the gun based on his movements during the ride and the subsequent discovery of the gun at his feet. The trier of fact was permitted to infer actual possession of the gun and the drugs at the same time. No nexus was required.

The evidence supported the enhancement finding.

*Offender Score*

Mr. Canfield next argues that the court erred in calculating the offender score, claiming that his prior history was not proved. Because the defense agreed with the prosecutor's summary of criminal history and the resulting standard ranges, this challenge is waived.[2]

It is the State's burden to prove criminal history at sentencing. *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). However, that burden is relieved if the defendant affirmatively acknowledges the alleged criminal history. *State v. Hunley*, 175 Wn.2d 901, 917, 287 P.3d 584 (2012). That is what the defense did here. When presented with the summary of criminal history, and an offer to present certified copies of the prior

---

[2] The prosecutor advised the court that he had certified copies of the prior convictions available in the event they were needed. Clerk's Papers at 120.

convictions, defense counsel told the court that he agreed with the computation of the ranges.

This was sufficient acknowledgement to relieve the State of having to do more. The trial court did not err by agreeing with the offender scores calculated by the parties and the ensuing high end ranges for each offense.[3]

The sentencing challenge was waived.

*Obstructing Charge*

Mr. Canfield next argues that his right to a unanimous verdict on the obstructing charge was violated by the failure of the prosecutor to either elect which action he was relying on or propose a unanimity instruction. A majority of the court agrees with this argument and reverses the obstruction charge.

Where the evidence shows multiple acts occurred that could constitute the charged offense, the State must either elect which act it relies on or the jury must be instructed that it must unanimously agree on which act it found. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Constitutional error occurs if there is no election and no unanimity instruction is given. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009); *State*

_____

[3] In the event that Mr. Canfield believes he can show that some of his prior offenses were used in error, he is free to present his evidence and argument at the next sentencing hearing. However, the State is not under any obligation to again prove the offenses unless it desires to address a defense argument.

*v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). This type of error requires a new trial unless shown to be harmless beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990).

However, no election or unanimity instruction is needed if the defendant's acts were part of a continuing course of conduct. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). Appellate courts must "review the facts in a commonsense manner to decide whether criminal conduct constitutes one continuing act." *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). A continuing course of conduct exists when actions promote one objective and occur at the same time and place. *Petrich*, 101 Wn.2d at 571; *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).

Although this author believes that this fact pattern involves a continuing course of conduct, thus negating the unanimity issue, a majority believes that this case was treated as a multiple acts case and needed a unanimity instruction. For that reason, the conviction is reversed.

Additionally, this court recently decided that passive resistance to handcuffing does not constitute obstructing a public servant. *State v. D.E.D.*, 200 Wn. App. 484, 496, 402 P.3d 851 (2017).[4] Because that type of evidence was presented to the jury here, and was argued as a basis for conviction, the jury may have relied on an insufficient

---

[4] *D.E.D.* was released after the trial in this case.

11

evidentiary theory to support its verdict. Reversal is required for that reason. *State v. Maupin*, 63 Wn. App. 887, 822 P.2d 355 (1992).

The conviction for obstructing a public servant is reversed. Whether or not the State elects to retry the obstructing count, a new sentencing hearing is required. If there is no obstructing conviction, the trial court must reallocate the credit for time served prior to sentencing to the felony offenses. In the event that the charge is retried and a conviction again ensues, a sentence would have to again be imposed for the offense. In either instance, Mr. Canfield will need to be resentenced.

*LFOs*

Mr. Canfield next argues that the trial court conducted an insufficient inquiry before imposing the discretionary LFOs. Because this matter must be remanded for resentencing, he is free to pursue this claim at that hearing. Accordingly, we do not otherwise address this argument.

*Costs on Appeal*

Lastly, Mr. Canfield asks that we waive appellate costs. Since he has prevailed to the extent of earning a new trial, the State is not a prevailing party. No costs will be awarded. RAP 14.2.

No. 34881-4-III
*State v. Canfield*


Affirmed in part and reversed in part.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, C.J.

13