# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77857-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MATTHEW DAVID LAMB, | ) | |
| | ) | FILED: June 24, 2019 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Matthew Lamb appeals his jury conviction for second degree identity theft, arguing that prosecutorial misconduct during closing argument deprived him of a fair trial. But the instances of alleged misconduct Lamb identifies do not constitute reversible error, either individually or cumulatively. We affirm.

## FACTS

On June 22, 2017, Riley Ledesma's truck was burglarized in Blaine, Washington.[1] Ledesma's backpack and computer were taken, along with his credit card, military identification card, and dog tags.[2]

On July 2, 2017, Officer Jacob Wilcox of the Tulalip Police Department was on patrol when he saw a man rifling through the trunk of a car.[3] Another man,

---

[1] Report of Proceedings (RP) (Oct. 23, 2017) at 129.

[2] Id. at 130.

[3] Id. at 136-38.

later identified as Lamb, was sitting in the front passenger seat.[4] Officer Wilcox checked the license plate and learned that the car had been reported stolen.[5] Officer Wilcox approached the car and instructed both men to lay on the ground.[6] Officer Wilcox noticed that Lamb was wearing Ledesma's dog tags around his neck.[7]

Officer Jeff Crippen was given some identification cards found with Lamb, including Ledesma's military identification card and credit card.[8] Officer Crippen asked Lamb if his name was Riley Ledesma, as listed on the identification card.[9] Lamb replied that it was.[10] Officer Crippen asked Lamb if his birthday was June 12, 1988, as listed on the identification card.[11] Lamb again agreed that it was.[12] Officers later determined Lamb's true identity and that he had outstanding warrants for his arrest.[13] Officers also found Ledesma's backpack inside the car.[14] The State charged Lamb with second degree identity theft. The State argued that Lamb committed identity theft by using Ledesma's identity to commit a crime,

---

[4] Id. at 139.
[5] Id.
[6] Id. at 142-44.
[7] Id. at 155.
[8] Id. at 164.
[9] Id. at 184.
[10] Id.
[11] Id. at 187.
[12] Id.
[13] Id. at 180.
[14] Id. at 132-33, 154.

namely: obstructing a law enforcement officer. Ledesma testified that he did not know Lamb and did not give him permission to use his identification. Lamb did not testify or present evidence. A jury convicted Lamb as charged. Lamb appeals.

## DISCUSSION

Lamb contends that the prosecutor committed misconduct in closing argument by impermissibly commenting on Lamb's exercise of his right not to testify and shifting the burden to him to disprove the elements of the crime and misstating the State's burden on a necessary element. Lamb argues that the prosecutor's remarks, either individually or cumulatively, violated his right to a fair trial.

"A claim of prosecutorial misconduct requires the defendant to show both that the prosecutor made improper statements and that those statements caused prejudice."[15] If the defendant fails to object to the alleged misconduct or request a curative instruction, any error is waived unless the conduct is "so flagrant and ill intentioned that it evinces an enduring and resulting prejudice" that could not have been neutralized by a curative instruction to the jury.[16] We focus "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured."[17] In evaluating a claim of prosecutorial misconduct, this court reviews a prosecutor's remarks "in the context

---

[15] State v. Lindsay, 180 Wn.2d 423, 440, 326 P.3d 125 (2014).

[16] State v. Hoffman, 116 Wn.2d 51, 93, 804 P.2d 577 (1991).

[17] State v. Emery, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury."[18]

Lamb first challenges the prosecutor's repeated remarks that the evidence against him was "uncontested." He argues that this constituted an improper comment on his exercise of his constitutional right not to testify. In the alternative, Lamb argues, the prosecutor improperly shifted the burden to him to disprove the State's evidence.

In closing argument, Lamb's attorney challenged the State's evidence and urged the jury to rely on their own common sense in determining whether the State had proved its case beyond a reasonable doubt. Lamb's attorney reminded the jury that Lamb did not have any obligation to testify:

> And I don't know how many times that I've had how people would say that I'd sure like to know what the other side of the story is from the defendant. Our system is set up to where the State has the burden. The defendant does not have to produce any evidence, he does not have to take the stand. You have those same rights, just like he does. In any given situation – well, I'll leave that up to you. Hopefully you're never in that situation. . . . [B]ecause he did not testify do[es] not infer guilt in any way.[19]

In rebuttal closing argument, the prosecutor stated:

> Defense is right. You don't check your common sense at the door when you come back here. And defense hasn't even contested the fact that Matthew Lamb used someone else's identity on that day and used that identity to avoid a warrant. That was nowhere in th[eir] closing argument. That is the crucial element of this case. He'll point to the Bellingham incidents or the backpack incident or where

---

[18] State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

[19] RP (Oct. 24, 2017) at 35-36.

things were at the time, but the crucial [question] here is just did the defendant use someone else's name[?] That is uncontested.[20]

The prosecutor acknowledged that it was unclear where Officer Crippen obtained the military identification card, arguing that the State's evidence was overwhelming:

> Doesn't matter, doesn't matter. What matters is whether he used Riley's name to avoid his warrant. That's what's uncontested; that's why I'm asking to return a verdict of guilty.[21]

Lamb did not object to any of the prosecutor's statements.

Those charged with a crime have a constitutional right not to testify against themselves.[22] Moreover, "[a] defendant has no duty to present evidence; the State bears the entire burden of proving each element of its case beyond a reasonable doubt."[23] When a prosecutor improperly remarks on a defendant's failure to testify, it violates the defendant's Fifth Amendment privilege against self-incrimination.[24] Courts consider two factors to determine whether such remarks are improper: (1) whether the prosecutor manifestly intended the remarks to be a comment on the defendant's exercise of his right not to testify and (2) whether the jury would naturally and necessarily interpret the statement as a comment on the defendant's silence.[25] However, stating that certain testimony is uncontested is

---

[20] Id. at 40 (emphasis added).

[21] Id. at 41 (emphasis added).

[22] U.S. CONST. amend. V; WASH. CONST. art. I, sec. 9.

[23] State v. Fleming, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996).

[24] Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

not categorically improper. A prosecutor may assert that specific facts are undisputed unless "no one other than [the defendant] himself could have offered the explanation the State demanded."[26]

Here, the prosecutor's statement "[t]hat is uncontested" was not improper. The prosecutor merely pointed out that there was no evidence contradicting the State's evidence that Lamb used Ledesma's identity. The prosecutor did not imply that Lamb was the only person who could refute the State's evidence. However, it was improper for the prosecutor to argue that "defense hasn't even contested" that Lamb used Ledesma's identity "to avoid a warrant." This was because Lamb was the only person who could have testified as to his own intent.[27] And such a statement implied that Lamb had an obligation to refute the State's evidence.

Nevertheless, because Lamb did not object to the prosecutor's statements, he must show that they were so flagrant and ill intentioned that they could not have been cured by an instruction to the jury. Both Lamb's attorney and the court instructed the jury that Lamb was not required to testify and that the jury was not permitted to infer guilt from Lamb's silence. We presume that juries follow the court's instructions.[28] Any prejudicial effect was mitigated by these instructions.[29]

---

[25] State v. Barry, 183 Wn.2d 297, 307, 352 P.3d 161 (2015) (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).

[26] State v. Fiallo–Lopez, 78 Wn. App. 717, 729, 899 P.2d 1294 (1995).

[27] Cf. id. (prosecutor improperly shifted the burden of proof to the defendant by arguing there was "absolutely" no evidence explaining why the defendant was in the same location as a drug transaction because only the defendant could have rebutted this argument).

[28] State v. Hanna, 123 Wn.2d 704, 711, 871 P.2d 135 (1994).

[29] See, e.g., State v. Ashby, 77 Wn.2d 33, 38, 459 P.2d 403 (1969).

Lamb also challenges the prosecutor's explanation of the to-convict instruction. He argues that the prosecutor misstated and minimized the State's burden regarding the element of knowledge.[30]

A person is guilty of second degree identity theft if he or she knowingly obtains, possesses, uses, or transfers a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.[31] The court gave the following to-convict instruction for second degree identity theft:

> To convict the defendant of the crime of identity theft in the second degree, the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 2nd day of July 2017, the defendant knowingly possessed, transferred, or used a means of identification or financial information of another person;
>
> (2) That the defendant did so with the intent to commit any crime;
>
> (3) That the defendant knew that the means of identification or financial information belonged to another person; and
>
> (4) That any of these acts occurred in the [s]tate of Washington.[32]

---

[30] The State inexplicably failed to address this argument in its brief. Lamb argues that the State thus conceded error on this issue. We elect to evaluate Lamb's claim on the merits.

[31] RCW 9.35.020.

[32] Clerk's Papers (CP) at 102.

After outlining the first two elements, the prosecutor stated:

> We gave you a definition of "intent" and "knowingly." Those words are here.. But "knowingly". . . is No. 8[.] [W]hat it means to be knowingly [is] basically if someone knows something. Right? If you know that you're using someone else's name, then you knowingly are using someone else's name. Pretty simple. Not a lot of argument, I expect, on that point. And same with "intent." If you mean something to happen, and you do it, you intended it to happen. So we'll set aside those.
>
> That the defendant knew that the means of identification or information belonged to another person. Did he know Riley Ledesma was not him[?] I think we can all figure that one out.[33]

Citing State v. Zeferino-Lopez,[34] Lamb asserts that the prosecutor misstated the law because the State was required to prove that Lamb knew the identification belonged to another real person, not that he knew the identification did not belong to him.

In Zeferino-Lopez, the defendant purchased a fraudulent Social Security card with his name on it and used it to obtain employment and a bank account.[35] He acknowledged that the card was fraudulent, but testified that he did not know the Social Security number actually belonged to another real person.[36] The prosecutor argued to the jury that the State was required to prove only that the defendant knew that the card was not his.[37] This court disagreed, holding that the

---

[33] RP (Oct. 24, 2017) at 18-19.

[34] 179 Wn. App. 592, 599, 319 P.3d 94 (2014).

[35] Id. at 593-94.

[36] Id. at 595.

[37] Id.

plain language of the statute required the State to prove the defendant knew the Social Security number actually belonged to someone else.[38]

Here, when the prosecutor told the jury they had to find "[t]hat the defendant knew that the means of identification or information belonged to another person," that was a correct statement of the law. However, the prosecutor's next statement, "Did he know Riley Ledesma was not him?", was potentially misleading because the jury could have inferred that they only had to find Lamb was using identification that he knew did not belong to him.

"A prosecuting attorney commits misconduct by misstating the law."[39] Nevertheless, Lamb did not object to the prosecutor's statement. When no objection is made to a prosecutor's misstatement of law during closing argument, we will not reverse unless the misstatement was so flagrant and misleading that it could not have been corrected by a curative instruction.[40] Had Lamb objected, the court could have remedied the misstatement by reiterating the language in the to-convict instruction, requiring the jury to find that Lamb "knew that the means of identification or financial information belonged to another person." The court could also have reminded the jury of jury instruction 1, which provided:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must

---

[38] Id. at 600.

[39] State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015).

[40] State v. Reed, 168 Wn. App. 553, 578, 278 P.3d 203 (2012) (quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.[41]

Even if the prosecutor's remarks constituted misconduct, reversal is not warranted.

Lamb argues that we should reverse his conviction due to the cumulative effect of the prosecutor's improper remarks. "The cumulative error doctrine applies 'when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial.'"[42] While we conclude that the prosecutor's remarks were improper, the combined effect from these improper remarks did not create the requisite prejudice necessary to establish cumulative error.

Affirmed.

WE CONCUR:

_____

Chun, J.

_____

Appelwick, CJ

---

41 CP at 97.

42 In re Pers. Restraint of Morris, 176 Wn.2d 157, 172, 288 P.3d 1140 (2012) (quoting State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000)).