# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

DANIEL JACOB MILTENBERGER,

Appellant.

No. 78126-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 15, 2019

LEACH, J. — Daniel Jacob Miltenberger appeals his conviction for first degree rape and first degree burglary with sexual motivation. Miltenberger claims that the prosecutor's closing argument unconstitutionally shifted the burden of proof and commented on his right not to testify. During closing argument, the prosecutor commented on inconsistencies in Miltenberger's theories of the case. The trial court sustained Miltenberger's counsel's objection to this statement as burden shifting and struck it. Because Miltenberger fails to show that the prosecutor's statements prejudiced him or implicated his right against self-incrimination, we affirm.

## BACKGROUND

The State charged Daniel Jacob Miltenberger with one count of first degree rape and one count of first degree burglary with sexual motivation.

At trial, the victim described an attacker entering her house and raping her at gunpoint. She also described the attacker's build, said he was wearing a striped long-sleeved shirt and a black mask, and testified that he had a splint and bandage on his arm. Snohomish County Sheriff's Office (SCSO) Detective Rich Emmons testified that Miltenberger was wearing a cast when he initially contacted Miltenberger. He also testified that detectives searching Miltenberger's house after the incident found a striped shirt, a pellet gun, and a paintball gun.

Lisa Collins, a forensic scientist at the Washington State Patrol Crime Laboratory, testified to the results of the analysis of deoxyribonucleic acid (DNA) evidence taken from genital, anal, and oral samples. The main samples belonged to two donors. One donor was the man the victim was dating. Collins testified that it was highly probable that the other donor was Miltenberger.[1]

SCSO Deputy Michael Vafeados testified that just after the incident, the victim told him that her backpack was missing. Officers executing a search warrant found the victim's property, including her backpack, during a search of Miltenberger's home.

During interviews with law enforcement and a forensic nurse, the victim sometimes described the attacker's shirt as black and red striped and sometimes

---

[1] The probability that the sample was a randomly selected person other than Miltenberger ranged from one in 1.2 billion to one in one sextillion depending on the type of cells tested and their original location on the victim's body.

as blue and black striped. She also described the gun as alternatively silver and black. The investigators did not recover a handgun or a black mask, nor did they recover all of the items the victim said were in her backpack at the time.

Miltenberger's counsel did not call any witnesses during trial. The jury found Miltenberger guilty as charged. He appeals.

ANALYSIS

First, Miltenberger contends that the prosecutor's closing argument impermissibly shifted the burden of proof and prejudiced him.[2] Miltenberger does not show prejudice.

Prejudicial prosecutorial misconduct deprives a defendant of his guaranty to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution.[3] To prevail on a claim of prosecutorial misconduct, the defendant must "show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial."[4] The State commits misconduct when it shifts or misstates its burden to prove the defendant's guilt beyond a reasonable doubt.[5] This misconduct is prejudicial if the defendant shows a

---

[2] The State refers to court cases that describe "prosecutorial misconduct" as an "unfair phrase that should be retired." We defer to the Supreme Court. See In re Pers. Restraint of Phelps, 190 Wn.2d 155, 165 n.3, 410 P.3d 1142 (2018).

[3] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012).

[4] Glasmann, 175 Wn.2d at 704; State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

[5] State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).

substantial likelihood that the misconduct affected the jury's verdict.[6] We review claims of prosecutorial misconduct for abuse of discretion.[7]

During closing argument, defense counsel identified what she considered inconsistencies and flaws in the State's case. She also reiterated the State's burden to prove its case beyond a reasonable doubt. On rebuttal, the prosecutor stated,

> Now, the problem with defense counsel's argument is that it vacillates. Either this didn't happen, or it happened and it's not [Miltenberger]. And if you followed the road of her argument, it tried to have it both ways. And you said it cannot. Either he was there that night and that's how his DNA got inside of her but it was consensual, or he was nowhere near there, at which point how did his DNA get inside of her? And how did her property get to his home?
>
> See, those are the questions, when you analyze closely defense [c]ounsel's argument, they simply cannot answer. They—

Miltenberger's trial counsel objected on the basis that the statement improperly shifted the burden of proof to Miltenberger. The trial court sustained the objection on this basis and struck the statement. It instructed the jury, "The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists."

Miltenberger fails to explain why the trial court's decision to sustain his counsel's objection and strike the prosecutor's comment is insufficient to cure the error. The State presented extensive evidence supporting his conviction,

---

[6] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).
[7] Lindsay, 180 Wn.2d at 430.

including the DNA analysis resulting in a high probability that samples taken from the victim's body belonged to Miltenberger, the cast the interviewing officer saw on Miltenberger's arm was consistent with the victim's description of her attacker, and the discovery of the victim's property at Miltenberger's house. "We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."[8]

Instead of identifying prejudice, Miltenberger assigns error to the prosecutor's actions and summarily claims that they denied him a fair trial. But for this court "to consider an alleged error in the State's closing argument, the defendant must ordinarily move for a mistrial or request a curative instruction."[9] Defense counsel did not ask for a mistrial below. On appeal, Miltenberger does not assert ineffective assistance of his trial counsel. Miltenberger's trial counsel's failure to move for a mistrial supports that the statement "did not appear critically prejudicial to [the] appellant in the context of the trial."[10]

Miltenberger does not establish that the court failed to cure the prosecutor's improper statement by striking it and instructing the jury that he had no burden of proof. Because he does not show the prosecutor's statements prejudiced him, we reject this claim.

---

[8] State v. Ainslee, 103 Wn. App. 1, 6, 11 P.3d 318 (2000).
[9] State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990) (citing 13 R. FERGUSON, WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4006, at 404 (1984)).
[10] Swan, 114 Wn.2d at 661.

Second, Miltenberger claims the same challenged statements in closing improperly drew attention to his failure to testify, violating his Fifth Amendment right against self-incrimination. Again, we disagree.

The State violates a defendant's Fifth Amendment right against self-incrimination if it draws attention to the defendant's failure to testify.[11] For example, a prosecutor's statement that the jury would "naturally and necessarily accept . . . as a comment on the defendant's failure to testify" violates the defendant's right against self-incrimination.[12] But "a prosecutor may comment on the absence of certain evidence if persons other than the defendant could have testified regarding that evidence."[13] In State v. Ashby,[14] the prosecutor's question—"Has anyone disputed that particular evidence that those articles were sold to [the defendant]?"—did not violate the defendant's right against self-incrimination.

Here, Miltenberger does not show that he was the sole potential witness capable of testifying about the issues that the prosecutor's statements raised, including the presence of his DNA inside of the victim, whether the sex was consensual, and the fact that the victim's property was found in his home. We

---

[11] State v. Ramirez, 49 Wn. App. 332, 339, 742 P.2d 726 (1987) (citing Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)).

[12] State v. Crawford, 21 Wn. App. 146, 152, 584 P.2d 442 (1978).

[13] State v Jackson, 150 Wn. App. 877, 887, 209 P.3d 553 (2009) (citing State v. Ashby, 77 Wn.2d 33, 37-38, 459 P.2d 403 (1969)).

[14] 77 Wn.2d 33, 37, 459 P.2d 403 (1969).

conclude that a jury would not "naturally and necessarily" accept the prosecutor's statements as a comment on Miltenberger's failure to testify.[15]

The statement did not implicate Miltenberger's right against self-incrimination.

## CONCLUSION

We affirm. Miltenberger does not show that the prosecutor's statements in closing prejudiced him or implicated his Fifth Amendment right.

_Leach, J._

WE CONCUR:

_Andrus, J._      _Mann, ACJ_

---

[15] Crawford, 21 Wn. App. at 152.